STATE OF CONNECTICUT *v.* JAMES V. DELVECCHIO

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

568

Argued April 4—decided June 19, 1962

*James O. Shea,* with whom were *Louis S. Votto* and, on the brief, *Arthur B. O'Keefe, Sr.,* for the appellant (defendant).

*George R. Tiernan,* prosecuting attorney, for the appellee (state).

BALDWIN, C. J.  This is an appeal from the Court of Common Pleas, where the defendant was accused of a violation, in 1959, of § 53-298 of the General Statutes, entitled "Policy Playing," [1] and was tried

---

[1] "Sec. 53-298.  POLICY PLAYING; GAMING BY USE OF LOTTERY SLIPS OR TICKETS.  Any person, whether a principal, agent or servant, who owns, possesses, keeps, manages or maintains, or assists in keeping, managing or maintaining, any policy-office or place where the game of chance, business, scheme or occupation, commonly known as policy, is, or is reputed to be, played or carried on, or any place where bets or wagers are, or are reputed to be, made upon the result of a drawing in any lottery, or of the drawing of any numbers by chance, or any place which is, or is reputed to be, resorted to for any such purposes in whole or in part, or writes, sells, bargains, exchanges, gives, transfers, delivers, buys, collects or receives, or is concerned in writing, selling, bargaining, exchanging, giving, transferring, delivering or receiving, any policy slips, tickets, tokens, numbers or chances, used in said game of chance, business, scheme or occupation, or in wagering or betting upon the result of any drawing in any lottery, or in any drawing of any numbers by chance, or collects or receives, or is concerned in receiving or collecting, any money or other valuable thing for any such slips, tokens, numbers or chances, or plays or takes part in any way in such game of chance, business, scheme, occupation, betting or wagering, in or out of any such office or place, or frequents any place or office where the game of chance, business, scheme or occupation, commonly known as policy, is, or is reputed to be, played or carried on in whole or in part, or any place where wagers or bets are, or are reputed to be, made upon the result of any drawing in any lottery, or of any drawing of any numbers by chance, or frequents any place which is, or is reputed to be, resorted to for any of such purposes in whole or in part, or makes, manufactures or keeps, or is the custodian of, any slips, tokens, papers, books, records or registers of bets or wagers, or any appliances or apparatus used for any such purposes, shall be fined not more than one hundred dollars or imprisoned not more than six months or both.  Any owner, mortgagee in possession, lessee or occupant of any building, room, structure or place, or part thereof, who knowingly permits the same to be used or occupied for any of the purposes mentioned in this section, shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

to the court. The court concluded that the defendant was "concerned in selling, exchanging, receiving and transferring policy slips, numbers and chances" in violation of the statute, and he was found guilty. See *State* v. *Genova,* 141 Conn. 565, 569, 107 A.2d 837. The defendant had been previously presented in the Municipal Court of West Haven on an information charging him, in a first count, with a violation of General Statutes § 53-295, entitled "Pool selling," and, in a second count, with a violation of § 53-298, the policy playing statute. That court had found him not guilty on the first count but guilty on the second. The instant case is the result of an appeal from that judgment to the Court of Common Pleas.

The defendant has assigned error in the finding, in rulings on the admission of evidence, and in the court's ruling that he was not put in double jeopardy by a finding of guilty of a violation of General Statutes § 53-298 when he had been acquitted, in the West Haven Municipal Court, of a violation of § 53-295.

We shall consider first the ruling on the admission of evidence. The defendant claims that the police obtained the decisive evidence in the case by a search of his person and automobile after an unlawful arrest without a warrant of any kind. The finding of the court, with such corrections as we find should be made, may be stated in summary as follows: About 2:45 in the afternoon of September 12, 1959, Paul Albanese drove his Nash Rambler automobile east on route 1 and turned into the west driveway of the Dairy Queen, an ice-cream parlor located on the south side of route 1 in West Haven. He went around the back of the building and parked on the east side of it, backed in on a

diagonal. He was alone. He got out of the car, bought some ice cream and returned to the car. He had sat there a few minutes when the defendant, in a Cadillac, drove into the west driveway of the Dairy Queen, circled behind the building, and came to a stop with the trunk of the Cadillac about in front of the Albanese car. Albanese then got out of his car and walked around the rear of the Cadillac towards the driver's side. A police officer, dressed in plain clothes, walked toward the Cadillac. The defendant started to drive away. The officer showed his police badge and ordered the defendant to stop; he did. Albanese had a brown paper bag in his possession. It contained a cloth bank bag in which there were a large number of sheets of blue-lined yellow paper, each separately rolled and held by an elastic band. The sheets were policy records which listed bets totaling $2694.62 on single-digit and three-digit numbers. They contained handwriting which indicated that a number of different agents had collected the bets.

Donald Paige, a police sergeant, arrested the defendant at the Dairy Queen. Albanese and the defendant were taken to the West Haven police headquarters, about two miles away. There, Paige searched the Cadillac. He found five packages of pads of blank blue-lined yellow paper, similar to the sheets in Albanese's possession which listed the policy bets; a box of carbon paper the size of the sheets; and, in the glove compartment, a pad of paper and a notebook. When the defendant was asked to empty his pockets, he took out a roll of money amounting to $1091 and a notebook which had inside it a pencil and a pad similar to the pad found in the glove compartment of the Cadillac. The pad which the defendant removed from his

pocket had written on it policy bets which were also listed in the policy records found in Albanese's possession. After the defendant said he had emptied his pockets, a further search revealed $9300 in cash. The defendant claimed that this was to be used for buying cars and belonged to his employer, an automobile dealer who was the registered owner of the Cadillac. There was no evidence that Albanese and the defendant had spoken to one another or that they knew one another.

At the trial, the defendant made timely objection to the admission in evidence of the items seized pursuant to the search of his person and the Cadillac. He claimed that the search and the seizure which made this evidence available to the prosecution were illegal and in violation of rights guaranteed to him by article first, §§ 8 and 9, of the constitution of Connecticut and the fourth, fifth and fourteenth amendments to the federal constitution.

It has long been the law in this state that evidence, although obtained by unlawful search and seizure, is, nevertheless, admissible in a criminal prosecution. *State* v. *Carol,* 120 Conn. 573, 575, 181 A. 714; *State* v. *Reynolds,* 101 Conn. 224, 231, 125 A. 636; *State* v. *Magnano,* 97 Conn. 543, 546, 117 A. 550; *State* v. *Griswold,* 67 Conn. 290, 306, 34 A. 1046. In *Mapp* v. *Ohio,* 367 U.S. 643, 648, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, the Supreme Court of the United States held that the rule announced in *Weeks* v. *United States,* 232 U.S. 383, 398, 34 S. Ct. 341, 58 L. Ed. 652, excluding, in federal courts, evidence obtained by searches and seizures in violation of the federal constitution, is enforceable against the states under the due process clause of the fourteenth amendment. On this point, the *Mapp* case, supra, 654, overruled *Wolf* v. *Colorado,* 338 U.S. 25,

69 S. Ct. 1359, 93 L. Ed. 1782. See *Thompson* v. *State,* 132 So. 2d 386, 388 (Ala.); *Commonwealth* v. *Spofford,* 180 N.E.2d 673 (Mass.); *State* v. *Valentin,* 36 N.J. 41, 43, 174 A.2d 737; *People* v. *Loria,* 10 N.Y.2d 368, 179 N.E.2d 478. The *Mapp* decision is binding on our courts. *International Union* v. *General Electric Co.,* 148 Conn. 693, 702, 174 A.2d 298; *Brownell* v. *Union & New Haven Trust Co.,* 143 Conn. 662, 669, 124 A.2d 901; *Wojculewicz* v. *Cummings,* 143 Conn. 624, 629, 124 A.2d 886. Although the *Mapp* case was decided after the defendant's conviction, it applies to this appeal and abrogates the rule laid down in earlier decisions. *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 676, 47 A.2d 187; *People* v. *Loria,* supra, 370; *State* v. *Valentin,* supra. The evidence seized was, therefore, inadmissible if the search and the seizure were unreasonable. If the search and the seizure were incidental to a lawful arrest, as the state claims, they were not unreasonable and the evidence was admissible. *Draper* v. *United States,* 358 U.S. 307, 314, 79 S. Ct. 329, 3 L. Ed. 2d 327; *United States* v. *Rabinowitz,* 339 U.S. 56, 60, 70 S. Ct. 430, 94 L. Ed. 653; *State* v. *Reynolds,* supra, 229; *State* v. *Magnano,* 97 Conn. 543, 545, 117 A. 550. Apart from the claim that the search and the seizure were not incident to a lawful arrest, the defendant makes no claim that they were unreasonable. See *Mapp* v. *Ohio,* supra, 649; *Rochin* v. *California,* 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 183.

We examine the law of this state to determine whether the arrest was lawful. See *Johnson* v. *United States,* 333 U.S. 10, 15, 68 S. Ct. 367, 92 L. Ed. 436; *United States* v. *Di Re,* 332 U.S. 581, 589, 68 S. Ct. 222, 92 L. Ed. 210. General Statutes § 6-49, entitled "Arrest without warrant," compre-

hends arrests for both misdemeanors and felonies.[2] *State* v. *Carroll*, 131 Conn. 224, 228, 38 A.2d 798. The violation with which the defendant was charged was a misdemeanor. General Statutes § 1-1. An arrest for a misdemeanor can be made by the peace officers named in § 6-49 without previous complaint and warrant when the person arrested "is taken or apprehended in the act or on the speedy information of others." The state does not rely on "speedy information" to justify the arrest of the defendant. See *State* v. *Carroll*, supra, 229; *Sims* v. *Smith*, 115 Conn. 279, 283, 161 A. 239. The question for decision, therefore, is whether the defendant was "taken or apprehended in the act," within the meaning of § 6-49. Obviously, because of the rationale of *Mapp* v. *Ohio*, supra, the evidence seized cannot be used to sustain the legality of the arrest. *United States* v. *Di Re*, supra, 595; *People* v. *Brown*, 45 Cal. 2d 640, 643-645, 290 P.2d 528; Dax & Tibbs, Arrest, Search and Seizure, p. 130.

We had occasion to consider the phrase "taken or apprehended in the act" in *Price* v. *Tehan*, 84 Conn. 164, 79 A. 68, which concerned an arrest, without a warrant, for a misdemeanor. We pointed out (p. 168) that the arrest there was made on the strength of the officer's own knowledge, gained from

---

[2] "Sec. 6-49. ARREST WITHOUT WARRANT. Sheriffs, deputy sheriffs, county detectives, constables, borough bailiffs, police officers, special protectors of fish and game and railroad and steamboat policemen, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others, and members of the state police department or of an organized local police department or county detectives shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony. Any person so arrested shall be presented with reasonable promptness before proper authority."

his personal observation. We held that the authority conferred in such cases is to arrest when the offender is "taken or apprehended in the act," which "implies an offender and an act of offense which is not in the past." In *McKenna* v. *Whipple,* 97 Conn. 695, 118 A. 40, which also involved an arrest for a misdemeanor without a warrant, we held (p. 700) that an officer acting, under the rule of *Price* v. *Tehan,* with reference to something within his own field of observation acts at his peril. The essential feature of an arrest of one "taken or apprehended in the act," which distinguishes arrests so made from other arrests under § 6-49 without previous complaint and warrant, is that one or more of the acts constituting the crime must have occurred in the presence of the officer. An accused is lawfully "taken or apprehended in the act" if the circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, gave him probable cause to believe that a crime was being, or had just been, committed. *State* v. *Reynolds,* 101 Conn. 224, 229, 125 A. 636; see *Carroll* v. *United States,* 267 U.S. 132, 159, 45 S. Ct. 280, 69 L. Ed. 543; *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879; *Draper* v. *United States,* 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed. 2d 327; 4 Wharton, Criminal Law and Procedure § 1599; Dax & Tibbs, op. cit., p. 130. Applying that test, and limiting ourselves, as we must, to the finding, we are forced to conclude, on the present record, that there was not a lawful arrest. It follows that there was error in the admission of the evidence seized.

Our right to remand a case for a new trial where there is error is unqualified. General Statutes

§ 52-265; see *Connecticut Importing Co.* v. *Janowitz,* 128 Conn. 433, 437, 23 A.2d 514. A remand for a new trial rather than for a directed judgment is particularly appropriate in the case at bar for the following reasons. The case was tried, the appeal taken, a finding made, and the record completed before the decision in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. Until then, evidence procured by a search and seizure without a search warrant was admissible under our law. Consequently, the trial court did not make its finding with the purpose in mind of including facts, which the appendices to the parties' briefs indicate might have been found, to establish that the search and the seizure were incidental to a lawful arrest. There may be other evidence which, in the light of the change in the law brought about by *Mapp* v. *Ohio,* supra, the state could produce. It is not within our province to add to a finding any facts from the evidence in the appendices or to draw inferences therefrom. That is the function of the trial court. See *People* v. *Coffey,* 11 N.Y.2d 142, 182 N.E.2d 92. The defendant has availed himself of the advantage accorded to him by the *Mapp* case while his appeal was pending. Due administration of justice requires that the state should be allowed an opportunity to show, if it can, that the search and the seizure were incident to a lawful arrest and were therefore valid. *People* v. *Loria,* 10 N.Y.2d 368, 374, 179 N.E.2d 478.

Since a new trial is to be ordered, we shall dispose of the defendant's claim that he was subjected to double jeopardy. He was acquitted in the Municipal Court of West Haven on a charge of violating § 53-295, the pool selling statute. He asserts that the offense charged under that statute and the of-

fense charged under § 53-298 are the same and that his acquittal on one charge barred any conviction on the other. It is well established that one set of facts can combine the necessary elements of two or more distinct offenses and that prosecution for one of the offenses will not bar prosecution for another of them. *State* v. *Andrews,* 108 Conn. 209, 215, 142 A. 840. A claim similar to the one the defendant has made, and based on the same statutes, was rejected in *State* v. *Fico,* 147 Conn. 426, 430, 162 A.2d 697.

The defendant also assigned error in one other ruling on evidence. That assignment, however, was not pressed in brief or oral argument, and we consider it abandoned.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

