STATE OF CONNECTICUT *v.* HAROLD FAHY

STATE OF CONNECTICUT *v.* WILLIAM ARNOLD

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

Argued April 3—decided June 26, 1962

*Francis J. McNamara, Jr.,* for the appellant (defendant in the first case).

*John J. Sullivan,* for the appellant (defendant in the second case).

*John F. McGowan,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

BALDWIN, C. J.    The defendants were tried on separate informations charging wilful injury to public property under General Statutes § 53-45, as amended by No. 437, § 1, of the 1959 Public Acts. The factual and legal issues in the cases are identical, and the cases were tried together to the court without a jury.    The court found the defendants guilty as charged and sentenced each of them to sixty days in jail.  They have appealed.

The trial court found the following facts:    On February 1, 1960, between the hours of 4 and 5 a.m., swastikas were painted with black paint on the steps and on the casing between two basement windows of the Temple Beth Israel, on Concord Street in Norwalk.  About 4:40 a.m., Osborn Lindwall, a Norwalk police officer, saw an automobile, without its headlights on, being operated on a public highway about a block away from this synagogue.  He signaled the car to stop but was obliged to pursue it in his police car for about a mile before it was halted.  The defendant Fahy was driving the car, and the defendant Arnold was a passenger.  Lindwall questioned them about their reason for being out at that hour, and they told him that they had been to a diner for coffee and were going home. Fahy had no license to operate a motor vehicle, and the officer insisted that Arnold drive.  The officer checked the car and found a jar of black paint and a two-inch paint brush under the front seat.  He followed the car to Fahy's home.  Later the same morning, he learned of the painting of the swastikas on the synagogue and reported that he had

seen the defendants in that vicinity. Police officers then went to Fahy's home and placed both defendants under arrest. They found the jar of black paint and the brush in the car in which the defendants had been riding when they were stopped earlier in the morning. The two-inch paint brush matched the markings made with black paint on the synagogue. The defendants admitted that they had painted the swastikas on the synagogue and that the paint found in the car had been used for that purpose.

The defendants claim, first, that the informations do not charge an offense under General Statutes § 53-45, as amended by Public Acts 1959, No. 437.[1] They concede that the synagogue is a public building but contend that the painting of the swastikas on it does not constitute a wilful injury within the intent of the statute. Their argument is predicated on the legislative history of this act. As originally enacted in 1832, the pertinent portion provided that,

[1] Prior to the action of the 1959 legislature, the statute read: "Sec. 53-45. INJURY TO PUBLIC BUILDINGS, FURNITURE OR VOTING BOOTHS. Any person who wilfully injures any public building or wilfully injures or carries away any part of the heating plant or equipment or furniture in and belonging to any such building or wilfully defaces or injures a voting booth or compartment shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

The 1959 public act, effective June 11, 1959, was as follows: "No. 437. AN ACT CONCERNING INJURY TO PUBLIC BUILDINGS. Section 1. Section 53-45 of the general statutes is repealed and the following is substituted in lieu thereof: (a) Any person who wilfully injures any public building or wilfully places a bomb or other explosive device in any such building shall be fined not more than five thousand dollars or imprisoned not more than twenty years or both. (b) Any person who wilfully injures or carries away any part of the heating plant or equipment or furniture in and belonging to any such building or wilfully defaces or injures a voting booth or compartment shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

"if any person shall wilfully and maliciously injure or deface any house of public worship, school-house, or other public building," he should be subject to penalties. Public Acts 1832, c. 9, § 2; Statutes, 1838, p. 182, § 2. This wording continued without material alteration until the Revision of 1875, when the words "or deface" were omitted, among other changes. General Statutes, Rev. 1875, p. 500, § 3. Since 1875, the wording of the phrase with which we are concerned has remained unchanged. The defendants claim that by the omission of the words "or deface" the legislature intended to treat the word "deface" as distinct from the word "injure." They argue that although the painting of swastikas on a building may be a defacement, it is not an injury to the building. A contrary holding is to be found in *Vaughn* v. *May*, 217 Mo. App. 613, 625, 274 S.W. 969.

In seeking to ascertain the intent of legislation, "[i]t is presumed that changes in the language of a statute made when it is incorporated into a revision are not intended to alter its meaning and effect, and this is particularly true of the Revision of 1875." *Castagnola* v. *Fatool*, 136 Conn. 462, 468, 72 A.2d 479, and cases cited. It is therefore to be assumed that the revisers in 1875 considered that the word "injure" conveyed the meaning of "injure or deface." The words have been judicially interpreted as synonymous. *Saffell* v. *State*, 113 Ark. 97, 99, 167 S.W. 483. The 1959 public act (No. 437) by its terms purported to repeal § 53-45 of the 1958 Revision but at the same time again adopted the language of the 1875 Revision which is material to us. Whether a new provision is in the form of a new enactment repealing the old, as in this case, or the form of an amendment of the old is immaterial and

depends on the preference of the draftsman. *Simborski* v. *Wheeler,* 121 Conn. 195, 200, 183 A. 688. The 1959 public act was, in effect, merely an amendment to § 53-45 of the General Statutes. See Prefatory Statement, Public Acts 1959. An amendatory act is presumed not to change the existing law further than is expressly declared or necessarily implied. *Norwalk* v. *Daniele,* 143 Conn. 85, 89, 119 A.2d 732. Nothing in the 1959 act either expressly declares or necessarily implies a change in the meaning of the language under scrutiny. The informations therefore charged an offense under § 53-45 as amended by No. 437, § 1, of the 1959 Public Acts.

The defendants assign error in the alleged refusal of the trial court to allow them to pursue their cross-examination of Officer Lindwall in an effort to establish the unlawful search and seizure of a paint jar and paint brush from Fahy's car when it was in a garage under the house where Fahy resided. After the date of the judgments, June 30, 1960, and while these appeals were pending, the Supreme Court of the United States announced its decision in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. This decision abrogated our prior law that relevant evidence, though obtained by unreasonable search and seizure in violation of the federal constitution, was admissible in evidence in our state courts. *State* v. *DelVecchio,* 149 Conn. 567, 572, 182 A.2d 402; see *State* v. *Carol,* 120 Conn. 573, 575, 181 A. 714; *Pickett* v. *Marcucci's Liquors,* 112 Conn. 169, 173, 151 A. 526; *State* v. *Reynolds,* 101 Conn. 224, 233, 125 A. 636; *State* v. *Magnano,* 97 Conn. 543, 117 A. 550; *State* v. *Griswold,* 67 Conn. 290, 305, 34 A. 1046. The rule of *Mapp* v. *Ohio,* supra, applies to a pending appeal. *State* v. *DelVecchio,* supra.

The finding concerning the ruling on evidence assigned as error, as corrected by the trial court subsequent to the decision in *Mapp* v. *Ohio,* supra, and before argument before us, discloses the following: Lindwall testified that he went to the Fahy residence before obtaining a search warrant to search the premises and that he entered the garage and removed the paint jar and the paint brush from the car. The defendants sought to examine Lindwall in order to establish that the paint and the brush were unlawfully seized, in violation of their rights under the fourth and fourteenth amendments to the federal constitution and article first, § 8, of the constitution of this state. The court precluded the defendants from pursuing this examination, on objection by the state that any illegal seizure of the paint jar and the brush did not prevent their admission in evidence in a state court. In argument before us on April 3, 1962, the question was raised by the state whether the corrected finding was sufficient for us fully to consider the error claimed. After the argument, the defendants moved that a certified transcript of the evidence taken at the trial be made a part of the record on appeal. The state acquiesced in the motion. Since the evidential ruling involved a matter as to which there had been a change in the law after the case was tried, the appeal taken and the original finding made, we granted the motion. *State* v. *Kreske,* 130 Conn. 558, 562, 36 A.2d 389.

An examination of the transcript discloses the following: The state, in its case in chief, produced William Tarsi of the Norwalk police department. He testified that on February 1, 1960, at about 6:55 a.m., he observed swastikas painted in black paint on the synagogue, and that they had not been

there when he observed the building at 4 a.m. that morning. The state then called Officer Lindwall, who testified to the facts already recited as having been found by the court, as follows: At about 4:40 a.m., he saw the Fahy car being operated, without lights on, about a block from the synagogue. He pursued the car until it stopped, and he questioned the defendants, who were riding in it. He observed a jar of paint and a brush in the car but did not take them into his custody. He allowed the defendants to proceed to Fahy's home and followed them until their car turned into the driveway.

The transcript further discloses the following evidence: When Lindwall learned, about 7:30 a.m., that swastikas had been painted on the synagogue, he went to Fahy's house, entered the garage and took the jar of paint and the brush from the car. On cross-examination, Lindwall testified that he entered the garage, that he removed the jar of paint and the brush from the car in the garage, and that he had no search warrant. Thereupon, he was asked whether he had applied for a search warrant, and the state objected. The court sustained the objection and refused to allow any further inquiry, on the ground, in effect, that the lack of a search warrant was immaterial.

Although the defendants objected to the admission of the paint jar and the brush when they were first offered, the objection was not at that time based on an illegal search and seizure, and the court was not asked to rule on their admissibility in the light of any such claim. See *Casalo* v. *Claro*, 147 Conn. 625, 629, 165 A.2d 153; *State* v. *DeGennaro*, 147 Conn. 296, 304, 160 A.2d 480. The reason for the requirement that there be timely objection and exception and also an adequate statement of the

claims on which the objection is based, in compliance with the rules of procedure (Practice Book § 155), are well stated in a concurring opinion by Judge Van Voorhis in *People* v. *Friola,* 11 N.Y.2d 157, 160, 182 N.E.2d 100, a case which also involved the application of the *Mapp* decision, supra: "Courts are continually reconsidering old precedents and, if no objection or equivalent was required here, objection would never be necessary to raise a question of law where it is urged that some former decisional law be changed. That would not accord with the purposes of the rule requiring an objection, which is to apprise the court and the adversary of the position being taken when the ruling is made. It is important to know at the time that rulings are being challenged so that additional evidence or argument may be presented and the point considered by the trial court with knowledge that the rule is being contested."

The specific ruling of which the defendants complain is the refusal of the court to allow them to cross-examine Officer Lindwall to show that the search and the seizure were illegal. The transcript reveals that much of the necessary evidence was already in the case and, further, that the defendants had ample opportunity to, and in fact did, elicit testimony from Lindwall on cross-examination adequate to lay a foundation for their claim. While the defendants failed to make proper objection to the admission of the evidence, they attempted later in the trial to raise the issue of the constitutionality of the search and the seizure, and we will consider it. See *People* v. *O'Neill,* 11 N.Y.2d 148, 152, 182 N.E.2d 95.

Security of one's privacy against arbitrary intrusion by the police is guaranteed by the federal

constitution as well as by the constitution of this state. U.S. Const. Amend. IV, XIV, § 1; Conn. Const. Art. I § 8; *Wolf* v. *Colorado,* 338 U.S. 25, 27, 69 S. Ct. 1359, 93 L. Ed. 1782. This protection extends to the premises where an unreasonable search is made. *Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357, 51 S. Ct. 153, 75 L. Ed. 374. Probable cause for a belief that certain articles subject to seizure are in a dwelling cannot in and of itself justify a search without a warrant. *Jones* v. *United States,* 357 U.S. 493, 497, 78 S. Ct. 1253, 2 L. Ed. 2d 1514; *Agnello* v. *United States,* 269 U.S. 20, 33, 46 S. Ct. 4, 70 L. Ed. 145. There are no exceptional circumstances in this case which would warrant the search and seizure here—circumstances such as the necessity for immediate seizure lest the criminals flee, or the articles be transported out of reach, before a lawful warrant could issue. See *United States* v. *Jeffers,* 342 U.S. 48, 52, 72 S. Ct. 93, 96 L. Ed. 59; *Johnson* v. *United States,* 333 U.S. 10, 15, 68 S. Ct. 367, 92 L. Ed. 436; *Carroll* v. *United States,* 267 U.S. 132, 151, 45 S. Ct. 280, 69 L. Ed. 543. The search took place about two hours before the arrest and cannot be justified as incidental to it. *Rios* v. *United States,* 364 U.S. 253, 261, 80 S. Ct. 1431, 4 L. Ed. 2d 1688; *United States* v. *Di Re,* 332 U.S. 581, 595, 68 S. Ct. 222, 92 L. Ed. 210; *State* v. *DelVecchio,* 149 Conn. 567, 573, 182 A.2d 402. The facts show that the officers had ample opportunity for procuring a search warrant without employing the method of illegal entry. See *Johnson* v. *United States,* supra. We conclude, therefore, that the search and the seizure by Lindwall at 7:30 a.m. were unlawful, since they were without a warrant and were not made in connection with a lawful arrest at that time. Under the rule of *Mapp* v.

*Ohio,* supra, 655, the evidence seized was inadmissible.

We come now to the question whether a new trial should be ordered. That depends on whether proper objection was made to the evidence claimed to have been erroneously admitted and whether the evidence was sufficiently consequential to affect the finding of guilt. We have already noted that the objection was insufficient to raise the constitutional question; nevertheless, we have considered that question on the basis of the court's ruling denying the defendants the right to cross-examine the police officer. The defendants do not claim, nor, as the transcript shows, could they claim, that the illegal search and seizure induced their admissions or confessions. Their claim is that, "[h]ad they been able to preclude the admission of the illegally seized evidence, [their] confessions would not have been admissible," under the rule of *State* v. *Doucette,* 147 Conn. 95, 98, 157 A.2d 487, because there was, apart from the confessions, insufficient evidence of the corpus delicti, that is, that the crime charged had been committed by someone. In other words, their claim is that the state, in order to prove that a crime had been committed, had to rely solely on the admission in evidence of the paint jar and the brush. The answer to that claim is that there was ample evidence besides the defendants' confessions and the jar of paint and the brush to prove that swastikas had been painted on the synagogue between the hours of 4 and 5 o'clock on the morning of February 1, 1960. This was sufficient to establish that the crime charged had been committed by someone. The confessions were not inadmissible on the ground claimed, and no other ground of inadmissibility is advanced.

The paint jar and the brush, which were exhibits, were, at most, cumulative. The transcript of the evidence of the state's case, in chief, discloses overwhelming evidence of the guilt of the defendants. They were observed a block from the scene of the crime at approximately the time when it was committed, riding in an automobile without lights, and were brought to a stop only after a police officer had pursued them for upwards of a mile. When the police later in the morning came with warrants to arrest them, they admitted their guilt at once and attempted to excuse their conduct as a "prank." Both later freely confessed. We are not required to grant a new trial if we are "of the opinion . . . errors [at the trial] have not materially injured the appellant." General Statutes § 52-265; *State* v. *Goldberger,* 118 Conn. 444, 454, 173 A. 216; *Carroll* v. *Arnold,* 107 Conn. 535, 544, 141 A. 657; *State* v. *Stevens,* 65 Conn. 93, 95, 31 A. 496; 1 Wigmore, Evidence (3d Ed.) § 21. Under the circumstances of this case, a new trial is unwarranted.

There is no error.

In this opinion the other judges concurred.