UNITED STATES ex rel. Preston
HOLLOWAY

v.

Frederick REINCKE, Warden Connecticut State Prison.

Civ. No. 9841.

United States District Court
D. Connecticut.

April 24, 1964.

David Borden, Hartford, Conn., for petitioner.

John D. LaBelle, State's Atty., Hartford, Conn., for respondent.

BLUMENFELD, District Judge.

Petitioner, a prisoner in Connecticut State Prison, on December 18, 1956 was indicted for violation of the Uniform State Narcotics Drug Act [1] and for being a third offender under the Act. He pleaded not guilty to the first part of the indictment and was convicted by a jury. At the trial, several articles which had been found by police officers in a search of the petitioner's rented room in an apartment building were admitted without objection, as were an analysis of his urine, an incriminatory admission, and torn bills which were taken from his person. The verdict was returned on June 11, 1957 and on the same day petitioner pleaded guilty to being a third offender as charged in the second part of the indictment. On June 18, 1957 he was sentenced to be imprisoned in the state prison for the term of his natural life. This sentence for a third offender was mandatory at the time of sentencing.[2] The Connecticut Supreme Court of Errors affirmed the conviction and sentence on December 1, 1959 [3] and certiorari was denied by the United States Supreme Court on April 18, 1960.[4]

Petitioner, on April 30, 1962, petitioned the Superior Court for Hartford County, Connecticut, for a writ of habeas corpus, which was denied on May 17, 1962.

1. Conn.Gen.Stats. § 3962 (1949) (amended by P.A.1959, No. 485, § 1, as amended Conn.Gen.Stats. § 19–246 (Supp.1963)).

2. Conn.Gen.Stats. § 2103d (Supp. II, 1955) (amended by P.A.1959, No. 485, §§ 2, 3, as amended Conn.Gen.Stats. §§ 19–265, 19–265a (Supp.1963)).

3. State v. Holloway, 147 Conn. 22, 156 A. 2d 466 (1959).

4. 362 U.S. 955, 80 S.Ct. 869, 4 L.Ed.2d 872 (1960).

His subsequent petition in October, 1962, "alleging illegal arrest and confinement, inadequate defense and cruel and unusual punishment" was also denied.[5]

Petitioner filed his petition for a writ in this court alleging that unconstitutionally seized evidence was admitted against him at his trial, that he was deprived of the assistance of counsel at a critical stage of the proceedings, and that his sentence constitutes cruel and unusual punishment. The court determined on the basis of the foregoing facts, without objection from the state, that petitioner had exhausted his state remedies. Fay v. Noia, 372 U.S. 391, 419–420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[6] Counsel was appointed, the writ issued and an evidentiary hearing was held as required by Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963).[7]

Since the court concludes that the introduction at petitioner's trial of evidence obtained in violation of his constitutional rights prevents his conviction from any longer justifying his imprisonment, it is unnecessary to consider any other of petitioner's alleged grounds for relief.

## THE SEARCH AND SEIZURE ITS CONSTITUTIONALITY

### Findings of Fact

Petitioner came to Hartford in July, 1956, and rented a room in an apartment building on Portland Street in the Windsor Street section of the city. He had been in Hartford four days when, on the afternoon of July 7th, he was stopped while walking on Windsor Street by Officers Grant and Bolden of the Narcotics Division of the Hartford Police.

The officers had been informed by two pharmacists in the Windsor Street section that a man of petitioner's description had attempted to purchase empty capsules and a tin of milk sugar from them. In 1956 narcotics violations were frequent in this section of Hartford. The officers also had reliable information that a man of petitioner's description associated with known narcotic users. Petitioner was stopped when one of the pharmacists pointed him out as the one who attempted to buy capsules and milk sugar.

The officers approached petitioner from the rear, immediately informed petitioner that they were police officers and instructed him to step off the sidewalk into the next doorway. He complied. When Officers Grant and Bolden approached petitioner, they intended to subject him to at least a search of his person. If petitioner had not cooperated as he did, they would have taken him to the station on an admittedly unfounded charge of breach of the peace and searched him there.

Petitioner, at the request of the officers, took off his coat and rolled up his sleeves revealing needle marks on his arms, which petitioner said were old ones. At the further request of the officers, he emptied his pockets. He had $89 which he said he had won in a crap game. The missing part of a torn bill was of a size to suggest it had been used to administer narcotics.

Petitioner was then asked to take the officers to his room which was two or three minutes away on foot and on another street. Petitioner did so, unlocking the door to his room himself. In accord-

5. Memorandum of Decision of Longo, J., No. 131369, Dec. 22, 1962, at p. 1 (Petitioner's Exhibit 2).
6. The state courts have had an opportunity to pass upon the constitutional claims of petitioner. "The rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of the power.' Bowen v. Johnston, 306 U.S. 19, 27 [59 S.Ct. 442, 446, 83 L.Ed. 455]." (Fay v. Noia, supra,

372 U.S. at 420, 83 S.Ct. at 839, 9 L.Ed. 2d 837).
7. "We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; * * * (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; * * *."

ance with instructions, he took off his clothing so as to enable the officers to search the linings for narcotics. None was found. The officers then searched the room without objection from petitioner, who said that he had nothing to hide. Officer Bolden told petitioner that they would search with his permission, but he admitted that they probably would have searched in the absence of such permission. The search uncovered an eye dropper, a knife, a charred bottle top, an opened can of milk sugar, burnt matches and tissue paper—all useful in preparing narcotics for administration. These were seized by the officers who had no warrant.

Before leaving petitioner's room, the officers formally announced that he was under arrest for breach of the peace. The charge was changed two days later on July 9th. At the station petitioner admitted that he had two injections [8] of narcotics recently and a urine sample was taken from him. Analysis of the urine disclosed that it contained morphine and quinine. Analysis of the can of milk sugar also revealed traces of morphine.

### Conclusions of Law

 Ultimately, petitioner's claim that his conviction was in violation of due process because obtained by introducing unconstitutionally seized evidence depends upon whether or not Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) is applicable. The preliminary question is whether the conduct of the officers violated the fourth amendment. See Ker v. California, 374 U.S. 23, 33, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963) (opinion of Clark, J.).[9]

The amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue,

but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The reasonableness of search depends in the first instance on the presence of either a valid arrest upon probable cause, Ker v. California, supra, 374 U.S. at 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (opinion of Clark, J.), or a valid search warrant. Neither existed here. Although the information received from the informers was sufficient to identify the petitioner, it was not sufficient to establish probable cause to believe that the petitioner had committed or was then committing a crime. See Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). That he had sought to buy gelatin capsules and milk sugar was not a crime. Nor would the added fact that he had associated with known narcotic users constitute any crime.

 Even assuming *arguendo* that the initial detention constituted a valid arrest upon probable cause, the search extended beyond the area of permissible search incident to arrest. The permissible scope of incidental search and its underlying rationale have been stated most recently by the Supreme Court in Preston v. United States, 84 S.Ct. 881:

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392 [34 S.Ct. 341, 344, 58 L.Ed. 652] (1914); Agnello v. United States, 269 U.S. 20, 30 [46 S.Ct. 4, 5, 70 L.Ed. 145]. (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll

---

8. He called them "pops."

9. " * * * [T]he reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of this Court applying that Amendment."

v. United States, supra, 267 U.S. [132], at 158 [45 S.Ct. [280] at 287, 69 L.Ed. 543], and, to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S., at 30 [46 S.Ct. 4, at 5, 70 L.Ed. 145]; Marron v. United States, 275 U.S. 192, 199, [48 S.Ct. 74, 77, 72 L.Ed. 231] (1927); United States v. Rabinowitz, 339 U.S. 56, 61–62 [70 S.Ct. 430, 433, 94 L.Ed. 653] (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U.S., at 31, [46 S.Ct. 4, at 5, 70 L.Ed. 145]." (84 S.Ct. at 883.)

Applying this test, the search of his room was clearly beyond the scope of permissible search incident to his original detention. The fact that the arrest was not formally announced until the officers and petitioner were at the apartment does not avoid this objection, for it is irrefutable that petitioner was subject to the control of the officers since the time of the original detention and that the officers entered the apartment for the purpose of searching and not for the purpose of making an arrest. See United States v. Festa, 192 F.Supp. 160, 163 (D.Mass.1960); United States v. Scott, 149 F.Supp. 837, 840 (D.D.C.1957).

 Inasmuch as the searches of petitioner's person and apartment cannot be justified as incident to an arrest, their validity depends upon whether the petitioner consented to them. On this issue the state has the burden of proving by clear and convincing evidence that consent was voluntarily and specifically given and that it was not the result of actual or implied coercion. See United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963).

 Circumstances indicative of consent voluntarily given are absent from this case. The alleged consent to either the search of petitioner's person or his room was not preceded by a voluntary confession that he had narcotics in his possession. Compare United States v. Smith, supra. Neither does it appear that petitioner actively cooperated with the officers in uncovering the seized evidence. Compare United States v. MacLeod, 207 F.2d 853 (7th Cir. 1953). His acts of stepping into the doorway, taking off his coat, rolling up his sleeves, and emptying his pockets amount to submission rather than active cooperation. His conduct in his room must also be characterized as submission. This is not a case in which the suspect consented "confident that the stratagem of inviting the agents to search would be the best way of dispelling their suspicions." United States v. Dornblut, 261 F.2d 949, 950 (2d Cir. 1958), cert. denied, 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959). Such a strategy was unavailable to the petitioner, for it was clear to him that he would be searched either in the doorway or at the police station. Similarly, his alleged "consent" to the search of his apartment was merely acquiescence to the inevitable. The fact that he showed the officers where he lived and opened the door with his key, is not sufficient to persuade me otherwise. Cf. Hall v. Warden, 313 F.2d 483, 494 (4th Cir.), sub. nom. Pepersack v. Hall, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032 (1963).

 The physical evidence seized and observed by the officers was unconstitutionally obtained, because obtained by means of an unconstitutional search. Whether or not the urine analysis and the admission made at the police station

were also fruits of the unconstitutional searches need not be decided in order to dispose of this case, for, if "there is a reasonable possibility that [any of] the evidence complained of might have contributed to the conviction," the conviction cannot stand. Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). Petitioner was prosecuted for unlawfully possessing, administering or dispensing narcotic drugs. The charge to the jury expressly stated that the existence of morphine in urine is not the possession contemplated by the statute and that the fact of its existence was only one circumstance to be taken into account.[10] As a circumstance it is far from conclusive since the possibility that the morphine was introduced into his system by some one else who also was the possessor of it was a real one. This weakness was not cured by the admission that he had two "pops" since cross-examination of Officer Grant revealed that the admission did not exclude the possibility that another administered the narcotics.[11] Thus there is a "reasonable possibility" that the evidence seized in petitioner's apartment, including articles which were typical of those used by addicts to administer narcotics and a can of milk sugar containing traces of morphine, "contributed to" the jury's finding of guilty and to petitioner's conviction.

## THE IMPRISONMENT ITS CONSTITU-TIONALITY

Having found that petitioner's conviction was based upon evidence obtained in

10. Record on appeal, Exhibit E, p. 18.

11. Trial transcript, Exhibit D, p. 86:
"Q. Now, did he tell you where he had met these men that he said he had been in the car with? A. I can't recall, unless he said he met them on Windsor Street, but I am not sure.
"Q. And, did he describe to you what had happened in the car? A. He told us they had all taken a pop in the car, and that is all.
"Q. Did he say that somebody had administered this thing to him in the car? A. I can't recall that, Mr. Cosgrove, no.

violation of his constitutional rights, it remains to consider the effect of this fact on the state's power to hold petitioner in prison. This will be determined by answering two questions: First, has petitioner waived the right not to be convicted by evidence obtained in violation of his constitutional rights by failing to object to the admission of that evidence at trial? Second, does Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), apply to render petitioner's imprisonment a denial of due process of law?

### The Failure to Object

The failure to assert his constitutional right at the trial cannot in and of itself bar him from asserting it in this proceeding. The failure to object at the trial has significance only in permitting Connecticut's Supreme Court of Errors to refuse to consider an error not called to the attention of the trial court. Questions not squarely raised at the trial may be considered on appeal. See State v. Hanna, 150 Conn. 457, 469, 191 A.2d 124 (1963). The rule of the Supreme Court of Errors provides:

"This court shall not be bound to consider any errors on an appeal unless they are specifically assigned and unless it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim, or that it arose subsequent to the trial." (Conn. Practice Book, Sec. 652 (1963 Rev.))

"Q. Didn't you ask him specifically? A. They tell me that they take a pop or do a fix, and that is all I know. I don't ask him who gives it to him or puts the needle in his arm. And I didn't ask him that.
"Q. Didn't you think it was important? A. Not after looking at his arms, no.
"Q. So, you didn't know if, in fact, somebody else had administered these things to him? A. No, I don't.
"Q. And, you don't know to this day, is that correct? A. Yes, sir; I don't, sir."

The significant question is whether petitioner waived his right. The failure to comply with a procedural rule to prevent the use against him of illegally seized evidence may have some bearing on whether he waived his right, but it is not conclusive. The test of forfeiture to be applied is:

"If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291, [68 S. Ct. 1049, 1063, 92 L.Ed. 1356]. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. Carnley v. Cochran, 369 U.S. 506, 513–517, [82 S.Ct. 884, 888–891, 8 L.Ed.2d 70]; Moore v. Michigan, 355 U.S. 155, 162–165, [78 S.Ct. 191, 195–197, 2 L.Ed.2d 167]. A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. E. g., Rice v. Olson, 324 U.S. 786, [65 S.Ct. 989, 89 L.Ed. 1367]." (Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 19 L.Ed.2d 837 (1963)) (n. 44 omitted)

Under this familiar standard, waiver may not be implied by the bare failure to act; rather, there must be "an intentional relinquishment or abandonment of a known right or privilege." Indeed, the court must "indulge every reasonable presumption against waiver" and cannot "presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L. Ed. 1461 (1938).

The statement in State v. Del-Vecchio, 149 Conn. 567, 572, 182 A.2d 402, 404 (1962), by Mr. Chief Justice Baldwin that "[i]t has long been the law in this state that evidence, although obtained by unlawful search and seizure, is nevertheless, admissible in a criminal prosecution" was equally true in 1957 when Holloway was tried. Reliance by counsel for Holloway upon the several earlier decisions of the Supreme Court of Errors was reasonable, since any objection would certainly have been overruled on the authority of those state cases which, even after Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), were approved in State v. Del-Vecchio, supra. To bind petitioner by his failure to object would, in the words of Judge Kaufman writing for the court in United States ex rel. Durocher v. La-Vallee, 2d Cir., 330 F.2d 303, be requiring the defendant to "perform a meaningless ritual in order to preserve vitally important constitutional rights." Id. at 309. To hold that Holloway or his counsel knew that Mapp would be decided as it was would be to apply a test of clairvoyance. The petitioner did not waive his right to bar the use of the unconstitutionally seized evidence in any human, practical or legal sense. See United States ex rel. Reid v. Richmond, 295 F.2d 83, 91 (2d Cir.) (dissenting opinion of Clark, J.), cert. denied, 368 U.S. 948, 82 S.Ct. 390, 7 L.Ed.2d 344 (1961).

### The Effect of Mapp

Notwithstanding the force of the twenty-two word per curiam order in Doughty v. Maxwell, 376 U.S. 202, 84 S. Ct. 702, 11 L.Ed.2d 650, 32 U.S.L.Week

3297,[12] which the Court of Appeals for this circuit, sitting en banc in United States ex rel. Durocher v. LaVallee, 2d Cir., 330 F.2d 303, regarded as compelling retrospective application of the constitutional right to counsel declared in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Court of Appeals wisely found it desirable to express the reasoning and logic of the considerations "which even before Doughty seemed to require a holding of retroactivity." United States ex rel. Durocher v. LaVallee, supra, 330 F.2d at 310. To some extent this was accomplished by adopting portions of the opinion of the late Circuit Judge Charles E. Clark, written for a panel of that court before Doughty was handed down. He said:

"Of course, we are past the splendid myth of 'discovered law,' 1 Blackstone, Commentaries 70, which once would have foreclosed discussion of the question. See Griffin v. Illinois, 351 U.S. 12, 26, 76 S.Ct. 585, 100 L. Ed. 891 (Frankfurter, J., concurring); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329; Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 363–366, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254; Address of Chief Judge Cardozo, 55 N.Y.St.Bar Ass'n Rep. 263, 294 et seq. (1932), reprinted in Hall, Selected Writings of Benjamin Nathan Cardozo 7, 33 (1947); Comment, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907 (1962). But cf. James v. United States, 366 U.S. 213, 247, 81 S.Ct. 1052, 6 L.Ed. 2d 246 (Harlan, J., concurring in part and dissenting in part); Hall v. Warden, Md. Penitentiary, 4 Cir.,

313 F.2d 483. We do not deal here, however, with considerations of res judicata and vested rights, but with the question whether, consonant with our society's conceptions of due process and general constitutional law, we could deny the constitutional right enunciated in Gideon to those who happened to be tried before the decision was handed down. Thus to hold would be to assign a lower constitutional status to pre-Gideon prisoners who were denied the right to counsel, a right so 'fundamental and essential to a fair trial' that it is made obligatory upon the States by the Fourteenth Amendment to the United States Constitution; a right that has been characterized by the Court as a 'basic minimal' right vouchsafed by the Constitution, Rideau v. Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 10 L.Ed.2d 663. There is no question that such prisoners were subjected to an unfair trial. The only question is whether we will deny them relief. We do not believe that our constitutional standards would permit such a denial." (Id. at 312) (n. 8 omitted)

Judge Clark makes clear that the question of retroactivity is not immutably settled by the doctrine of discovered law, and Judge Kaufman writing for the majority specifically stated that the decision of the court did not dispose of the issue of the retroactivity of Mapp. Id. at 310, n. 3. Nevertheless, as I read the portion of the opinion quoted above, I can only conclude that the court has enunciated a principle of retroactivity which goes beyond the facts peculiar to the case before it, namely that if a person is serving a sentence based upon a conviction which under current standards violated his constitutional rights, then the Constitution

12. The United States Supreme Court on the authority of its decisions in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), summarily reversed the Supreme Court of Ohio's denial of

habeas corpus relief to Doughty who, without the assistance of counsel, had earlier pleaded guilty to an indictment for rape in 1959. For the full history of Doughty's case see United States ex rel. Durocher v. LaVallee, infra, 330 F.2d at 314.

requires that he be released or granted a new trial. See, e. g., Hall v. Warden, 313 F.2d 483 (4th Cir.), cert. denied, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032 (1963); United States ex rel. Eastman v. Fay, 225 F.Supp. 677 (S.D.N.Y. 1963); Hurst v. California, 211 F.Supp. 387 (N.D.Cal.1962).

The rationale of this circuit for holding Gideon retroactive is clearly in opposition to the rationale of the Tenth Circuit Court of Appeals for holding Mapp prospective only in Gaitan v. United States, 317 F.2d 494 (10th Cir. 1963), which emphasized the need for "stability of judicial administration." The principle of res judicata is inapplicable in a habeas corpus proceeding. As stated by Mr. Justice Brennan in Sanders v. United States, 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963): "Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." In one sense the right of the government to imprison a person is determined by the judgment of conviction. But another view of the matter is that the government must, as often as the question arises, demonstrate its right to continue the restraint of liberty and that a challenge of its right to do so creates a present dispute to be determined by present constitutional standards. Compare Sanders v. United States, supra, 373 U.S. at 17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Fay v. Noia, supra, 372 U.S.

at 401–402, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[13]

The holding of Mapp that a person has a constitutional right not to be convicted upon evidence seized in violation of his rights under the fourth amendment is unmistakable. For this reason I hold that petitioner is now being deprived of his liberty without due process of law.

Other courts have reached a contrary conclusion by reasoning that the purpose of the right enunciated in Mapp is to deter police misconduct and that this purpose is not served by retroactive application. E. g., United States ex rel. Linkletter v. Walker, 323 F.2d 11 (5th Cir. 1963); United States ex rel. Emerick v. Denno, 220 F.Supp. 890 (S.D.N.Y.1963), aff'd. on other grounds, 328 F.2d 309 (2d Cir. 1964). See generally, Bender, The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio, 110 U.Pa.L.Rev. 650 (1962); Note, 71 Yale L.J. 907 (1962). I cannot agree. Mapp does not rest upon a factual determination that exclusion is necessary to deter police invasions of the right to privacy. The opinion of the court expressly states that such practical considerations are not controlling, and repudiates the analytical framework of its decision in Wolf which suggested that they were.[14]

Mapp rests on the ground that it is fundamentally unfair for a state to convict a person on the basis of evidence obtained by means of an unjustified gov-

13. The legal and historical bases of habeas corpus was summed up in Fay v. Noia:

"Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."

(372 U.S. at 401–402, 83 S.Ct. at 828, 9 L.Ed.2d 837)

Subsequently in Sanders v. United States the Supreme Court, in discussing problems raised by successive habeas corpus applications, stated:

"If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application." (373 U.S. at 17, 83 S. Ct. at 1078, 10 L.Ed.2d 148)

14. "It, therefore, plainly appears that the factual considerations supporting the failure of the Wolf Court to include the

ernmental invasion of his right to privacy of his person, his property and his home. Cf. Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The gap between an exclusionary rule and the language of the fourth amendment, which does not expressly provide for the exclusion of evidence, was bridged by inexorable reasoning that the latter would be meaningless without the former. But the thrust of this argument is not that exclusion is necessary in order to deter.[15] It is that exclusion is necessary in order to vindicate the constitutional rights of the person whose privacy has been unjustifiably invaded by the government.[16] Forbidding the introduction into evidence of unconstitutionally obtained evidence, which cuts off "[t]he ignoble shortcut to conviction left open to the State," [17] will of course deter the police from committing such intrusions, just as the exclusion of coerced confessions will deter police brutality. But the deterrent effect merely makes more impressive a result reached on other grounds by application of the traditional due process standard of fundamental fairness.

▇▇ As already stated, a deprivation of liberty based upon a conviction which under the present view of the law was fundamentally unfair is without due process of law. The petitioner's conviction was obtained by the use of evidence in violation of his constitutional rights as they are now unmistakably defined. The fact that he has already spent a number of years in prison under that conviction cannot justify a conclusion that he "owes" all of the remaining years of his life to the State of Connecticut. Cf. Jones v. Cunningham, 319 F.2d 1, 5 (4th Cir. 1961) (concurring opinion of Sobeloff, C. J.). "[H]abeas corpus has traditionally been regarded as governed by equitable principles," Fay v. Noia, supra, 372 U.S. at 438, 83 S.Ct. at 848, 9 L.Ed.2d 837, where "causes are disposed of on the facts as they appear at the time of the disposition." United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953) (dissenting opinion of Frankfurter, J.). The statutory instruction in habeas corpus matters is to "dispose of the matter as law and justice require." 28 U.S.C. § 2243 (1958).

The petitioner's imprisonment is no longer justified by the existing judgment of conviction. The writ ordering his discharge from custody should issue.

So ordered.

Weeks exclusionary rule when it recognized the enforceability of the right to privacy against the States in 1949, *while not basically relevant to the constitutional consideration*, could not, in any analysis, now be deemed controlling." (367 U.S. at 653, 81 S.Ct. at 1691, 6 L.Ed.2d 1081.) (Emphasis added.)

15. The irrelevance of the deterrent effect to the constitutional question is emphasized by the following language in the opinion of Mr. Justice Clark:
"\* \* \* [N]othing could be more certain than that when a coerced confession is involved, 'the relevant rules of evidence' are overridden without regard to 'the incidence of such conduct by the police,' slight or frequent. Why should not the same rule apply to what is tantamount to coerced testimony by way of unconstitutional seizure of goods, papers, effects, documents, etc.?" (367 U.S. at 656, 81 S.Ct. at 1692, 6 L.Ed.2d 1081.)

16. In comparing the fourth and fifth amendments, Mr. Justice Clark said: "The philosophy of each Amendment and of each freedom is complementary to, although not dependent upon, that of the other in its sphere of influence —the very least that together they assure in either sphere is that no man is to be convicted on unconstitutional evidence. Cf. Rochin v. People of State of California, 1952, 342 U.S. 165, 173 [72 S.Ct. 205, 210, 96 L.Ed. 183]." (367 U.S. at 657, 81 S.Ct. at 1692, 6 L.Ed.2d 1081)

17. 367 U.S. at 660, 81 S.Ct. at 1694, 6 L.Ed.2d 1081.